## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EMILE LEVET, JR., ET AL** | * | **CIVIL NO. 6:15-2069** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **EXXON MOBIL CORP.** | * | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is Exxon Mobil Corporation's ("Exxon") Motions to Dismiss filed on September 17, 2015.  [rec. doc. 8].  Plaintiffs, Emile Levet, Jr., Roger Moore and Julie Peltier Moore, filed opposition on October 6, 2015.  [rec. doc. 12].  Exxon filed a reply on October 12, 2015.  [rec. doc. 15].

For the following reasons, the motion [rec. doc. 8] is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Emile Levet, Jr. ("Levet") owns and uses a tract of land located in the Bayou Sale Oil & Gas Field in St. Mary Parish, Louisiana ("Field").  [Petition, ¶ 2].  Roger Moore and Julie Peltier Moore (the "Moores") co-own and use contiguous tracts of land in the Field.  [Petition, ¶ 3].  Levet and the Moores claim that Exxon and 2H Incorporated ("2H") contaminated their properties by oil and gas exploration and production activities, including the "operation or construction of various oil and gas facilities, including but not limited to, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities."  [Petition, ¶ 7].

Levet and the Moores allege that Exxon, through its predecessor, Humble Oil and Refining Co. ("Humble"), acquired an Oil, Gas and Mineral Lease (the "lease") covering plaintiffs' property in 1958 and again in 1972.  [Petition, ¶ 10].  Pursuant to the two leases, Exxon drilled three wells located near plaintiffs' property.  [*Id*.].  2H's predecessor, Tribal Drilling Company ("Tribal"), acquired an Oil, Gas and Mineral Lease covering plaintiffs' property in 1966.  [Petition, ¶ 11].

Plaintiffs allege that, in connection with oil and gas-related operations, Exxon and 2H disposed of oilfield wastes in a pit located on plaintiffs' property from as early as 1964 to at least the late 1970s. [Petition, ¶ 12].  Plaintiffs further allege that they have suffered damages resulting from the improper disposal of hazardous oilfield wastes in unlined earthen pits constructed by defendants near the property during the course of oil and gas exploration and production activities.  [Petition, ¶ 13].

On June 9, 2015, plaintiffs filed suit in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, against Exxon and 2H for damages to plaintiffs' property allegedly caused by contamination from defendants' oil and gas exploration and production activities.[1]  Specifically, plaintiffs assert claims for negligence; breach of contract; fraud, ill practices and misrepresentation; trespass; continuing trespass; violations of LA. CIV. CODE art. 667 for damages causes by toxic and hazardous waste; premises liability under LA. CIV. CODE arts. 2317 and 2322; breach of remediation obligations under LA. CIV. CODE arts. 2683, 2686, 2692; mineral servitude violations; breach of obligations under the Louisiana Civil Code and Louisiana Mineral Code; punitive damages under former LA. CIV. CODE art. 2315.3; civil fruits derived from trespass under LA. CIV. CODE art. 486; continuing nuisance, and unjust enrichment.  [Petition, ¶¶ 20-40].  Exxon removed the action to this Court on July 17, 2015, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On September 17, 2015, Exxon filed the instant motion to dismiss on the grounds that plaintiffs failed to state claims for: (1) fraud and misrepresentation; (2) punitive damages under article 2315.3; (3) continuing tort, continuing trespass, and continuing nuisance; (4) premises liability under articles 2317 and 2322; (5) civil fruits; (6) breach of express lease terms; (7) rental payments owed under

---

[1] The Louisiana Supreme Court has dubbed this type of lawsuit "legacy litigation" because it "arise[s] from [oilfield] operations conducted many decades ago" that left "an unwanted 'legacy' in the form of actual or alleged contamination."  *Alford v. Chevron U.S.A. Inc*., 13 F.Supp.3d 581, 587-88 (E.D. La. 2014), *order amended on reconsideration* (June 4, 2014) (Vance, J.) (*citing Marin v. Exxon Mobil Corp*., 48 So.3d 234, 238 n. 1 (La. 2010)).

article 2683(1); (8) personal servitude of use under articles 576 and 577, and (9) unjust enrichment. [rec. doc. 8].

Plaintiffs conceded that they cannot maintain a claim for punitive damages, continuing tort, civil fruits, rental payments under Louisiana Civil Code Article 2683(1), and unjust enrichment against Exxon. [rec. doc. 12, pp. 8, 19]. Thus, those claims should be dismissed.

## II. STANDARD FOR MOTION TO DISMISS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litig.*, 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

### III. ANALYSIS

Exxon filed the instant motion to dismiss on the grounds that plaintiffs failed to state claims for: (1) fraud and misrepresentation; (2) punitive damages under former article 2315.3; (3) continuing tort, continuing trespass, and continuing nuisance; (4) premises liability under articles 2317 and 2322; (5) civil fruits; (6) breach of express lease terms; (7) rental payments owed under article 2683(1); (8) personal servitude of use under articles 576 and 577, and (9) unjust enrichment. [rec. doc. 8].

In opposition, plaintiffs concede that they cannot maintain a claim for punitive damages, continuing tort, damages based upon article486 for civil fruits, rental payments under Louisiana Civil Code Article 2683(1), or unjust enrichment against Exxon. [rec. doc. 12, pp. 8, 15, 19]. Thus, only the remaining claims will be addressed.

#### A.  Fraud Claim

Exxon argues that plaintiffs failed to plead their fraud claim with particularity under Fed. R. Civ. P. 9(b).

Louisiana law defines fraud as follows:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

LA. CIV. CODE art. 1953.

Plaintiffs allege that defendants failed to warn plaintiffs of the toxic and hazardous nature of the contaminant waste left on their property. [Petition, ¶¶ 13, 18, 19, 20]. They argue that this failure to warn is the functional equivalent to a suppression of the truth, silence and/or inaction, which are elements of fraud under art. 1953.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for fraud claims. Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge and

other conditions of a person's mind may be alleged generally." *Id*.

What constitutes particularity "will necessarily differ with the facts of each case," *Shushany v. Allwaste, Inc*., 992 F.2d 517, 521 (5th Cir. 1993) (*citing Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)), and should be determined in light of the purposes the rule is intended to serve. *In re Ford Motor Co. Bronco II Products Liab. Litig*., 1995 WL 491155, at *6 (E.D. La. Aug. 15, 1995) (*citing Shushany*, 992 F.2d at 521). The purposes of Rule 9(b) are to enable defendants to prepare a meaningful response, to preclude the use of a groundless claim and a pretext to discover a wrong, and to safeguard defendants from lightly made charges which might damage their reputation. *Id*. (*citing Shushany*, 992 F.2d at 521).

Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading. *Douglas v. Renola Equity Fund II, LLC*, 2014 WL 1050851, *3 (E.D. La. March 14, 2014) (*citing Hernandez v. CIBA-GEIGY Corp*. *USA*, 2000 WL 33187524, at *5 (S.D. Tex. Oct. 17, 2000) (*quoting* Wright & Miller, *Federal Practice & Procedure* § 1298)). The Fifth Circuit interprets Rule 9(b) strictly, requiring plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*., 565 F.3d 200, 207 (5th Cir. 2009) (*citing Williams v. WMX Tech., Inc*., 112 F.3d 175, 177 (5th Cir. 1997)). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 723 (5th Cir. 2003) (*quoting Williams*, 112 F.3d at 179 (5th Cir. 1997)); *Caillet v. Regions Financial Corp*., 282 F.R.D. 406, 418 (W.D. La. 2012) (Doherty, J.).

The requirements of Rule 9(b) are "supplemental to the Supreme Court's interpretation of Rule 8(a) requiring enough facts [taken as true] to state a claim to relief that is plausible on its face." *Lentz*

*v. Trinchard*, 730 F.Supp.2d 567, 579 (E.D. La. 2010) (*citing U.S. ex rel. Grubbs v. Kanneganti*, 565

F.3d at 185) (*quoting Twombly*, 550 U.S. at 570)).  Further, a plaintiff may plead fraud "upon

information and belief" only when the relevant facts are peculiarly within the opposing party's

knowledge, and the plaintiff supports his allegations with an adequate factual basis.  *Douglas*, 2014

WL 1050851, at *4; *see also U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899,

903 (5th Cir. 1997).  This exception "must not be mistaken for license to base claims of fraud on

speculation and conclusory allegations."  *Thompson*, 125 F.3d at 903 (*quoting Tuchman v. DSC*

*Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

State-law fraud claims, such as the one alleged by plaintiffs here, are subject to the pleading

requirements of Rule 9(b).  *Douglas*, 2014 WL 1050851, at *4 (*citing Dorsey v. Portfolio Equities,*

*Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

Here, plaintiffs' allegations of fraud are related to defendants' superior knowledge and their

failure to inform plaintiffs of the consequences of the exploration and production activities conducted

on their property.  [rec. doc. 12, p. 6].  With regard Exxon's knowledge, plaintiffs' allegations are:

> Since at least the 1930's, it has been common knowledge in the oil industry that the
> disposal of oilfield wastes in unlined earthen pits inevitably results in seepage, which
> contaminates both surface and subsurface soils and waters.  Those defendants who
> operated in the 1930's or thereafter possessed such knowledge.  Plaintiffs have suffered
> damages resulting from the improper disposal of oilfield wastes in unlined earthen pits,
> which were constructed by Defendants near the Property during the course of oil and gas
> exploration and production activities.  The oilfield wastes deposited in these pits
> include, but are not limited to, such substances as naturally occurring radioactive
> material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons, and heavy
> metals.  Also, leaks, spills, and other surface and subsurface discharges of these and
> other substances from wells, pipelines, tank batteries, gas plants, and other equipment or
> facilities have further polluted the surface and subsurface of Plaintiffs' Property.

[Petition, ¶ 13].

> Defendants knew or should have known that their day to day operations in the Field
> would cause the soil, surface waters and groundwater of Plaintiffs' Property to be
> contaminated with the substances described in paragraphs 13 and 17 above.  Rather than
> remove those substances during and after oil and gas exploration and production

activities, Defendants chose to conceal and cover up their contamination.  This concealment and cover up was routine practice and has continued to date.  The Defendants' failure to responsibly and timely remove or remediate this toxic pollution in the soils and groundwater of Plaintiffs' Property has allowed the pollution to migrate and spread.  Defendants' pollution has not permanently damaged the aquifers underlying the Field.

[Petition, ¶ 18].

Defendants have engaged in acts that effectually have prevented Plaintiffs from availing themselves of the causes of action alleged herein.  These acts include fraud, ill practices, and misrepresentation intentionally committed by defendants (or their representatives) designed to hinder, impede or prevent Plaintiffs from asserting their causes of action or to lull Plaintiffs into a false sense of security.  Such acts of fraud, ill practices, and misrepresentation include: (1) burying, hiding or actively concealing pollution; (2) failing to inform Plaintiffs that unlined earthen pits near their Property seeped and leaked; (3) failing to inform Plaintiffs that the use of the unlined pits that seep and leak violates state regulation; (4) failing to inform Plaintiffs that failure to remove or remediate contamination caused by unlined earthen pits violates state regulation; (5) failing to inform Plaintiffs that pollution that migrates out of the confines of an unlined earthen pit will continue to migrate, spread and cause further damage to their Property; (6) failing to inform Plaintiffs of the hazardous and toxic nature of the oilfield pollution on their Property; and (7) failing to inform Plaintiffs that the oilfield practices followed by Defendants would result in pollution and property damage.

[Petition, ¶ 20].

In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading.  *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F.Supp.3d 882, 893 (E.D. La. 2014) (*citing Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)); *Sarrat v. Univar U.S.A., Inc.*, 2014 WL 3588849, *2 (E.D. La. July 18, 2014).

Various courts have noted that fraud by silence is, by its very nature, difficult to plead with particularity.  *Chrysler Credit Crop. v. Whitney Nat. Bank*, 824 F.Supp. 587, 598 (E.D. La. 1993) (*citing Daher v. G.D. Searle & Co.*, 695 F.Supp. 436, 440 (D. Minn. 1988)).  Because it does not involve affirmative misrepresentation, it often does not occur at a specific place or precise time, or

involve specific persons.  *Id.*  Nevertheless, in order to adequately plead fraud by silence, Louisiana courts generally require plaintiffs to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information.  *Id*.; *Bishop v. Shell Oil Co.*, 2008 WL 57833, at *1 (E.D. La. Jan. 3, 2008).

Here, I find that while plaintiffs have sufficiently alleged the information that was withheld – that disposal of oilfield waste could contaminate land and water – they have not adequately pled the remaining elements.  As to the second element, plaintiffs' allegations regarding the time period during which the fraudulent conduct occurred are extremely over broad.  Additionally, they have not plead a relationship giving rise to a duty to speak.  *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) ("[t]o establish a claim for intentional misrepresentation when it is by silence or inaction, plaintiffs also must show that the defendant owed a duty to the plaintiff to disclose the information.").  Lastly, they have not shown that defendants gained from withholding information regarding the dangers of oilfield waste.

While I recognize that plaintiffs' complaint fails in several respects to satisfy the pleading requirements of Rule 9, I also recognize that plaintiffs' complaint adequately describes the nature of the fraud and/or misrepresentation. Accordingly, I believe that the sanction of dismissal is not appropriate. The remedy for a failure to plead fraud with sufficient particularity is not a motion to dismiss, but a motion for a more definite statement.  *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, 2013 WL 990026, at *3 (E.D. La. Mar. 13, 2013); *United Ins. Co. of America v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 402 (E.D. Pa.1967).  If plaintiffs desire to proceed with their claims of fraud against defendants, they must amend their complaint to rectify the deficiencies noted herein. *See Bishop*, 2008 WL 57833, at *2.

In this case, plaintiffs can remedy the defects in the pleadings by simply amending their complaint. Thus, I recommend that the Court, *sua sponte*, treat Exxon's motion to dismiss as a motion for more definite pleading and order plaintiffs to amend their complaint to state with particularity the circumstances attending this alleged misrepresentation.  *See DuSesoi v. United Refining Co.*, 540 F.Supp. 1260, 1272-73 (W.D. Pa. 1982)

Accordingly, I recommend that the Motion to Dismiss be treated as a motion for more definite statement, and that plaintiffs be allowed leave to amend their complaint **within fifteen (14) days** regarding their claims for fraud and misrepresentation.

## *B. Continuing Trespass Claims*

In the Petition, plaintiffs alleged claims for continuing trespass.  These allegations are as follows:

> Defendants are also liable in tort and have trespassed and continue to trespass on Plaintiffs' property.  Defendants' acts or omissions, and their unlawful conduct, have caused successive damages or an ongoing and cumulatively increasing deterioration of Plaintiffs' Property.  The pollution caused by the defendants continues to migrate.  The cause of the increasing damages to Plaintiffs' land is the failure of the defendants to remove their pollution from neighboring properties and from Plaintiffs' Property.  The cause of the damages suffered by Plaintiffs is thus a continuous cause giving rise to successive damages.
>
> ***
>
> Further, the continued presence of oilfield wastes on, in, and/or beneath Plaintiffs' Property constitutes a trespass.  The continuous and ongoing migration of waste is causing new and ever-increasing damage to Plaintiffs' Property, and such damage will continue until such time as these wastes are removed and remediated.

[Petition, ¶ 23].

Louisiana law defines "trespass" as "the unlawful physical invasion of the property of another." *Vermilion Parish Sch. Bd. v. BHP Billiton Petroleum (Americas), Inc*., 2005 WL 2406157, at *6 (W.D. La. Sept. 29, 2005) (Doherty, J.); *Bayou Fleet Partnership v. Clulee*, 13-934 (La. App. 5 Cir. 9/10/14, 7); 150 So.3d 329.  Plaintiffs assert that Exxon's predecessors committed a trespass by operating outside of the authority granted by the lease and polluting plaintiffs' properties.  In support of their

position, plaintiffs cite *Vermilion Parish*, in which Judge Doherty recognized the well-established principle that the mere existence of a mineral lease does not automatically grant a lessor the right to enter the leased property for *all purposes, nor to damage property in perpetuity*.  (emphasis in original).  *Id*. at *7 (*citing Terrebonne Parish School Board v. Columbia Gulf Transmission Company*, 290 F.3d 303 (5th Cir. 2002); *Gaspard v. St. Martin Parish Sewerage District No. 1*, 569 So.2d 1083 (La. App. 3 Cir. 1990); *Ortego v. Sevarg Company, Inc*., 550 So.2d 340 (La. App. 3 Cir.1989)); *see also Alford v. Chevron U.S.A., Inc*., 13 F.Supp.3d 581, 604 (E.D. La. 2014) (Vance, J.), and *Alford v. Anadarko E & P Onshore LLC*, 2014 WL 1612454, at *17 (E.D. La. Apr. 22, 2014) (Vance, J.) (operating outside the scope of a mineral lease by polluting and severely damaging property constitutes a trespass under Louisiana law).

Exxon argues that plaintiffs' claims for continuing trespass and continuing nuisance have prescribed.  While plaintiffs concede that they do not have a claim for continuous tort, they maintain that they still have causes of action for continuing trespass and continuing nuisance.

A suit seeking damages for trespass is an action in tort.  *Hogg v. Chevron USA, Inc*., 2009-2632 (La. 7/6/10, 15-16); 45 So.3d 991.  As a tort action, it is subject to the one-year liberative prescription of LA. CIV. CODE arts. 3492 and 3493.  In cases involving damage to immovable property based on article 3493, Louisiana jurisprudence draws a distinction between damages caused by continuous, and those caused by discontinuous, operating causes:

> When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. *See South Central Bell Telephone Co. v. Texaco, Inc*., 418 So.2d 531 (La.1982), and cases cited therein. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage. See A.N. Yiannopoulos, Predial Servitudes, § 63 (1982).

*Hogg*, 45 So.3d at 1002-03

To determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort; *i.e.*, the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen. *Id.* at 1003-04.  Here, plaintiffs assert a claim for continuous trespass.  Where the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage. *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99, 7); 737 So.2d 720, 726 (*citing South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d at 531, 533 (La. 1982)).

In this case, plaintiffs allege that, in connection with oil and gas-related operations on the property, Exxon and 2H disposed of oilfield wastes in a pit located on property from as early as 1964 to at least the late 1970s.  [Petition, ¶ 12].  There are no allegations of new conduct, *i.e.*, new leaking of oilfield contaminants, after the initial leakage ceased.  It is not the continued presence of oilfield contaminants on plaintiffs' property, but rather the conduct that resulted in the introduction of contaminants onto the property, that is the operating cause of plaintiff's injury. *Hogg*, 45 So.3d at 1006 (operating cause of plaintiffs' injury was leaking underground storage tanks, not the presence of the gasoline on plaintiffs' property); *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10, 29); 48 So.3d 234 ("operating cause of the injury sued upon was the deposit and storage of oilfield wastes into unlined pits which conduct terminated when the pits were closed. Any dissolution of this contamination unto and into plaintiffs' property is the resulting damage of the damage-causing conduct, and does not give rise to a continuing tort.").

Because the operating cause of the injury – the damage-causing conduct (leaking oilfield wastes) – is not continuing, there is no continuing tort. *Hogg,* 45 So.2d at 1006.  As a result, the theory of continuous trespass/continuous tort cannot operate to suspend the running of prescription. *Id*.  Thus,

this claim should be dismissed.

### C. Claim for Continuing Nuisance

In the Petition, Plaintiffs also assert a claim for continuing nuisance as follows:

[D]efendants' conduct of their oil and gas exploration and production activities and the associated discharge, disposal or storage of oilfield waste on Plaintiffs' Property have created an ongoing and damaging nuisance to Plaintiffs' and Plaintiffs' Property.

[Petition, ¶ 23].

Plaintiffs' claim for continuing nuisance fails for the same reasons as their continuing tort claims. *Anadarko*, 2014 WL 1612454, at *20 (*citing Hogg*, 4 So.3d at 1003) (equating the concepts of continuing tort, continuing trespass, and continuing nuisance).[2]  As Judge Vance noted in *Anadarko*, "the facts alleged in the complaint do not plausibly suggest that there is an *ongoing* nuisance causing harm to plaintiffs' property."  (emphasis in original).  *Id.*  Thus, this claim must fail.

In response to Exxon's brief, plaintiffs assert that they have stated a cause of action under article 667.  The obligations of neighborhood set forth in LA. CIV. CODE arts. 667-669 are the source of nuisance actions in Louisiana.  *Hogg*, 45 So.3d at 1003 n. 13 (*citing Rodrigue v. Copeland*, 475 So.2d 1071, 1077-1078 (La. 1985)).  The current versions of these articles provide, in pertinent part, as follows:

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

---

[2] Several of the plaintiff attorneys involved in *Anadarko* are representing plaintiffs in the present litigation.

LA. CIV. CODE art. 667.

> Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

LA. CIV. CODE art. 668.

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

LA. CIV. CODE art. 669.

> Plaintiffs allegations under article 667 are as follows:

> Defendants are also liable to Plaintiffs under La. Civ. Code art. 667 of the Civil Code for the damages caused by their storage, discharge, and disposal or toxic and hazardous waste and toxic oil field waste in the Field.  La. Civ. Code art. 667 was amended by Act 1 of 1996, effective April 16, 1996.  To the extent that Defendants are deemed "proprietors" within the meaning of La. Civ. Code art. 667, said Defendants are strictly liable to Plaintiffs under article 667 for damages sustained by Plaintiffs before April 16, 1996.  Plaintiffs' claims under article 667 for damages occurring on or after April 16, 1996, are governed by the amended version of Civil Codes article 667.  To the extent the Defendants held any rights in any mineral leases or servitudes on neighboring property, Plaintiffs and Defendants are neighbors that owe obligations to each other under article 667 of the Civil Code.

[Petition, ¶ 25].

Plaintiffs have made allegations under both the pre-1996 and post-amendment versions of

article 667.  Before the 1996 amendments to the Civil Code, article 667 provided as follows:

> Although a proprietor may do with his estate what he please, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

Louisiana courts interpreted the pre-1996 version of article 667 to impose strict liability – that

is, liability without fault – on defendants for damage caused by an activity deemed ultrahazardous.

*Anadarko*, 2014 WL 1612454, at *19 (*citing Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 96-

218 (La. App. 3 Cir. 11/6/96); 683 So.2d 1319, 1321).  In 1996, the legislature amended article 667 to

require a showing of negligence in any claim for damages under article 667 other than those caused by "pile driving" or "blasting with explosives."  *Id.*; *Yokum v. 615 Bourbon Street, L.L.C.*, 977 So.2d 859, 874 (La. 2008).

Here, however, Exxon has not filed for dismissal of plaintiffs' claims under article 667.[3]  The only nuisance claim for which Exxon sought dismissal was plaintiffs' claim for "continuing nuisance,"  Thus, to the extent that plaintiffs' claims under article 667 do not involve claims for continuing nuisance, these claims should remain.

### D. Premises Liability Under Civil Codes Articles 2317 and 2322

Plaintiffs asserted claims under articles 2317 and 2322 for premises liability as follows:

Defendants are strictly liable to Plaintiffs under the provisions of La. Civ. Code articles 2317 and 2322.  At all times pertinent hereto, Defendants had *garde* of the facilities and equipment that caused the  pollution described herein.  Those defendants who participated in the above described oil and gas operations by the acquisition of working interests had sufficient control to constitute *garde* under the provisions of La. Civ. Code art. 2317.  On information and belief, the joint operating agreements or unit agreements that governed the conduct of the oil and gas activities of Defendants show that the working interest owners or other participants in such agreements: (1) had the right to control operations conducted pursuant to the agreements; and (2) held proportional ownership interests in the facilities and equipment which caused the pollution complained of herein.  Such ownership gives rise to a presumption of *garde*.  The acquisition of any leasehold or other ownership interest gives rise to a presumption of *garde*.

[Petition, ¶ 25].

Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."  Before 1996, custodians were strictly liable under Louisiana law for injuries caused by things in their custody.  *Anadarko*, 2014 WL 1612454, at * 22.  Accordingly,

---

[3]Judge Vance addressed similar arguments regarding plaintiffs' claims under article 667 in *Anadarko*, 2014 WL 1612454, at *19-22, finding that plaintiffs had plausibly alleged delictual claims against Chevron, but no other defendant, for violating the duties imposed by article 667.  In *Alford v. Anadarko*, 2015 WL 471596, at *9, Judge Vance found that plaintiffs' amended strict liability claim was still deficient, and dismissed plaintiffs' claims under article 667 against Chevron and all other defendants.

to recover under article 2317, a plaintiff had to establish only three elements: (1) the thing causing his damage was in the custody (or guarde) of the defendant; (2) the thing had a "defect" or a condition creating an unreasonable risk of harm; and (3) the defective condition caused plaintiff's injuries.  *Id.* (*citing Hebert v. Southwest Louisiana Elec. Membership Corp*., 95-405 (La. App. 3 Cir. 12/27/95, 12); 667 So.2d 1148).

In 1996, the Louisiana legislature amended the Civil Code to impose a negligence standard. *Coulter v. Texaco Inc*., 117 F.3d 909, 913 n. 8 (5th Cir. 1997). Today, in order to prevail on a custodial liability claim under article 2317, a plaintiff must prove a fourth element as well: that "the defendant knew or should have known of the defect" that caused the plaintiff's injuries. *Cormier v. Dolgencorp, Inc*., 136 F. App'x 627, 627-28 (5th Cir. 2005) (*citing* LA. CIV. CODE. arts. 2317, 2317.1)).

Article 2322 applies specifically to buildings, and provides as follows:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

A plaintiff must plead the following elements to state a claim under article 2322: "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." *Broussard v. State ex rel. Office of State Bldgs*., 2012-1238 (La. 4/5/13, 8); 113 So.3d 175.  Like article 2317, article 2322 imposed liability without fault before the 1996 revisions to the Civil Code.  *Anadarko*, 2014 WL 1612454, at * 23 (*citing Celestine v. Union Oil Co.*, 652 So.2d 1299, 1303 (La. 1995)).

In *Anadarko*, Judge Vance dismissed similar claims under articles 2317 and 2322 for plaintiffs' failure to plead the elements of these claims.  She noted that while plaintiffs had pled that defendants

had "*garde* of the facilities and equipment" causing the alleged pollution, plaintiffs had not any alleged any facts suggesting that those facilities or equipment contained a "defect" or "ruin" posing an unreasonable risk of harm. *Id.* at 23. She further found that "[a]llegations that the defendants had custody of facilities and that the facilities caused harm in the form of pollution are not enough; the harm must be there result of a defective condition in order for a claim under article 2317 or article 2322 to lie." *Id.*

After plaintiffs amended their complaint to restate their claims under articles 2317 and 2322, Judge Vance still found their allegations deficient. *Alford v. Anadarko E&P Onshore LLC*, 2015 WL 471596, at *9-10 (E.D. La. Feb. 4, 2015). She noted that once again, plaintiffs had failed to allege the type of "defect" or "ruin" required for liability under articles 2317 and 2322 to attach. *Id.* at 10. Additionally, she observed that plaintiffs provided no factual allegations that these alleged problems posed an unreasonable risk of harm. Further, she found that plaintiffs had not alleged any facts plausibly suggesting that the harms they allegedly suffered "were *caused by* a 'defect' or ruin.'" (emphasis in original). *Id.* Judge Vance concluded that "[a]llegations that the defendant had custody of facilities, that the facilities 'contained' a defect, and that the facilities caused harm in the form of pollution are not enough; the harm must be *caused* by the allegedly defective condition in order for a claim under article 2317 or article 2322 to lie." (emphasis in original). *Id.*

As in *Anadarko*, this is a legacy suit involving some of the same plaintiff counsel. Like *Anadarko*, while plaintiffs have pled that defendants had "*garde* of the facilities and equipment that caused the  pollution described herein," plaintiffs failed to allege any facts suggesting that those facilities or equipment contained a "defect" or "ruin" posing an unreasonable risk of harm. Because plaintiffs have failed to pled the essential elements of a premises liability claim, it should be dismissed.

### E. Claims for Breach of Express Lease Terms

Exxon argue that plaintiffs claims for breach of express lease terms should be dismissed. In the

Petition, plaintiffs alleged claims relating to breach of contract as follows:

> [W]ith regard to the contractual liability of the defendants, the express remediation obligations of any leases at issue, and the covenants and other provisions implied in any leases at issue by operation of law or the application of the mineral code, impose continuing remediation obligations on the lessees.  Such lease obligations were violated.

[Petition, ¶ 26].

> Defendants' conduct as described above constitutes a breach of the oil, gas, and mineral leases, surface leases, servitude agreements and other applicable contracts that covered the oil and gas activities described above.

[Petition, ¶ 27].

Plaintiffs concede in their opposition that "the mineral leases at issue in this case do not contain express language that addresses the issue of restoration."  [rec. doc. 12, p. 15].  Additionally, plaintiffs have pointed to no other provision of the lease, or of any other agreement, that defendants breached through the conduct alleged in the petition.  As in *Anadarko*, the undersigned finds that plaintiffs have failed to state a claim for breach of an express contractual provision.  2014 WL 1612454, at *9.

### F. Breach of Implied Obligations Claim

Plaintiffs also allege that defendants are impliedly obligated under Louisiana's Civil Code and Mineral Code to restore their land to its pre-lease condition less normal wear, and are further obligated to remediate damage resulting from unreasonable, negligent or excessive operations.  [rec. doc. 12, pp. 15-16].  In support of their argument, plaintiffs cite articles 2683, 539, 576 and 577,[4] and the courts' holdings in *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 2004-0968 (La. 1/19/05); 893 So.2d 789, and *Marin*, 48 So.3d at 259-60.

Article 2683 provides as follows:

The lessee is bound:

---

[4] Plaintiffs confirm that they made no claim pursuant to article 2683(1).  [rec. doc. 12, p. 17].

17

(1) To pay the rent in accordance with the agreed terms;

(2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and

(3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.

LA. CIV. CODE art. 2683.

Essentially, plaintiffs argue that under *Castex* and *Marin*, they are entitled to restoration of their property to the original pre-lease condition, less normal wear and tear, because of Exxon's "unreasonable, negligent, or excessive operations." [rec. doc. 12, pp. 15-16]. In *Castex*, the Louisiana Supreme Court held that, in the absence of an express lease provision, article 122 of the Mineral Code, LA. REV. STAT. § 31:122,[5] which obligates a mineral lessee to act as a reasonably prudent operator, does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee exercised rights under the lease unreasonably or excessively. *Id.* at 801. *Marin*, which involved a legacy claim against Exxon as in this case, clarified the Court's holding in *Castex* as follows:

> In our view, the duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code by virtue of our holding in *Castex*, and it certainly exists under the Civil Code. The holding in *Castex* merely recognized that in absence of unreasonableness or excessiveness, the lessee has the duty to restore the surface minus normal wear and tear. Where the lessee has operated unreasonably or excessively, as in this case, the lessee has additional obligations, *e.g.*, the obligation to correct the damage due to the unreasonable or excessive operations. However, that does not necessarily mean that the lessee has a duty to restore the land to its pre-lease condition, particularly where, unlike dredged canals, subsurface contamination is not overt and cannot be considered "wear and tear." *Castex* explained that in determining what constitutes necessary "wear and tear" in a particular case, "it is useful to consider

---

[5]Article 122 of the Mineral Code provides: "A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee."

LA. REV. STAT. § 31:122

the character of the specific rights granted in the lease" to consider whether the lessor consented to the particular activities. 893 So.2d at 800. The damage caused by Exxon's unreasonable operations was the contamination of the soil, and it is clear plaintiffs did not consent to this contamination. Therefore, Exxon's additional restoration duty is the duty to correct the contamination.

48 So.3d 234, 259-60

Plaintiffs concede that they have made no claim for payment of rent under article 2683(1).

Exxon does not dispute plaintiffs' claims under article 2683(2) or (3).  Thus, these claims should

remain.

### G. Claims Under Articles 576 and 577

Plaintiffs also filed claims under LA. CIV. CODE articles 576 and 577 for Exxon's violation of

a personal servitude as follows:

Plaintiffs claim damages for the violation of any personal servitude of use applicable to the neighboring properties in accordance with the provisions of La. C.C. arts. 576, 577, and 645.

[Petition, ¶ 28].

Article 576 provides as follows: "[t]he usufructuary is answerable for losses resulting from his

fraud, default, or neglect."

Article 577 provides, in pertinent part, that "[t]he usufructuary is responsible for ordinary

maintenance and repairs for keeping the property subject to the usufruct in good order, whether the

need for these repairs arises from accident or *force majeure*, the normal use of things, or his fault or

neglect."

Article 539 provides as follows:

If the things subject to the usufruct are nonconsumables, the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their substance.

He is bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct.

Article 645 provides as follows:

A right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude.

Plaintiffs argue that Exxon is liable under these articles, which apply to personal servitudes of use, because the leases here are "dismemberships of the ownership of the land, and real rights with some characteristics in the nature of limited personal servitudes were created as a result of these dismemberments."  [rec. doc. 12, p. 17].  They assert that these rules obligate Exxon to repair and restore the land subject to the usufruct or predial servitude, and render Exxon liable for any damages or repairs resulting from Exxon's fault, neglect, accidents, or normal use of the property subject to the usufruct.

Although plaintiffs' petition refers to servitude agreements, plaintiffs allege no facts and attach no documentation suggesting that Exxon ever held a servitude of use on their property.  In *Anadarko*, Judge Vance addressed this argument as follows:

Plaintiffs never allege in their complaint that any of the defendants held a mineral servitude on the property in question, and none of the documents attached to plaintiffs' complaint suggest that any defendant ever owned such an interest. Thus, plaintiffs cannot state a claim against any of the defendants under the codal provisions governing the obligations of servitude holders. *See, e .g., Walton,* 2013 WL 163739, at *9-11[6] (noting that Mineral Code article 22, entitled "Certain rights and obligations of the mineral servitude owner," is, by its express terms, applicable only to mineral servitude holders).

*Anadarko*, 2014 WL 1612454, at *12.

Here, as in *Anadarko*, plaintiffs have failed to sufficient facts to establish that Exxon held a mineral servitude on their property.  Thus, plaintiffs cannot state a claim against Exxon under the codal provisions governing the obligations of servitude owners.  Accordingly, this claim must fail.

---

[6]*Walton v. Burns*, 47,388 (La. App. 2 Cir. 1/16/13, 11); 151 So.3d 616.

## IV. CONCLUSION

Based on the foregoing reasons, I recommend that the Motion to Dismiss [rec. doc. 8] be

**GRANTED IN PART AND DENIED IN PART** as follows:

(1) That the Motion to Dismiss plaintiffs' claims for fraud and misrepresentation be treated as a

motion for more definite statement, and that plaintiffs be allowed leave to amend their complaint

**within fifteen (15) days** regarding these claims;

(2) That the Motion to Dismiss be **GRANTED** as to plaintiffs' claims for continuing trespass,

continuing nuisance, premises liability under LA. CIV. CODE articles 2317 and 2322, breach of

express lease terms, and claims under LA. CIV. CODE article 576 and 577, and that those claims be

**DISMISSED WITH PREJUDICE**, and

(3) That, due to plaintiffs' agreement that they have no claims for punitive damages, continuing

tort, rent under LA. CIV. CODE art. 2683(1), damages based upon LA. CIV. CODE art. 486 for civil

fruits, and unjust enrichment, those claims be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by

this recommendation have fourteen (14) days from service of this Report and Recommendation to file

specific, written objections with the Clerk of Court.  A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a

courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL**

**FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS**

**REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE**

**DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY**

**FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE**

**FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT**

21

**COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 19th day of November, 2015, at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**